UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| CHARLES JACKSON,<br><br>   Plaintiff,<br><br>v.<br><br>J. GILLEY,<br><br>   Defendant. | No. 6:23-CV-104-REW<br><br><br>MEMORANDUM OPINION<br>AND ORDER |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Charles Jackson is a federal prisoner who was previously confined at FCI Manchester located in Manchester, Kentucky.[1] Proceeding without an attorney, Jackson has filed a civil complaint pursuant to *Bivens v. Six Unknown Federal Narcotics Agents*, 91 S. Ct. 1999 (1971), against Defendant J. Gilley. DE 1 (Complaint). By prior order, the Court granted Jackson's motion to proceed without prepayment of the filing fee. DE 6 (Order Granting IFP). Thus, this matter is now before the Court to conduct a preliminary review of Jackson's complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A.

**I.   Background**

In his complaint, Jackson alleges that beginning around August 10, 2021, he experienced severe stomach pain, requiring multiple visits to a medical provider for treatment for diarrhea, constipation, and blood in his stool. *See* DE 1 at 2–3. Eventually, Jackson underwent an EGD/colonoscopy, and his results were normal. *Id*. at 3. However, his pathology showed that he

---

[1] Jackson is currently confined at FCI Edgefield located in Edgefield, South Carolina. *See* DE 7 (Notice).

1

was positive for Helicobacter pylori (H. pylori), a result that Jackson attributes to the drinking water at FCI-Manchester. *Id*. Based on these allegations, Jackson brings Eighth and Fourteenth Amendment claims against Warden J. Gilley, alleging that Gilley failed to provide adequate drinking water and failed to notify the inmate population of unsafe water conditions. *Id*. at 3–4. As relief, Jackson seeks monetary damages for his pain and suffering. *Id*. at 8.

## II.     Standard

A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007); *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010); *see also* Fed. R. Civ. P. 8. Upon initial screening, the Court must dismiss any claim that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant obviously immune from such an action. *See McGore v. Wrigglesworth*, 114 F.3d 601, 607–08 (6th Cir. 1997), *overruled on other grounds*. At this stage, the Court accepts Jackson's factual allegations as true. *See Twombly*, 127 S. Ct. at 1965. Because he is not represented by an attorney, the Court evaluates Jackson's complaint under a more lenient standard. *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007).

## III.    Analysis

Upon review of the complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A, the Court must dismiss the complaint for failure to state a claim upon which relief may be granted.

Constitutional claims against individual federal employees (such as Jackson's claims against Gilley) are brought pursuant to the *Bivens* doctrine, which provides that an individual may "recover money damages for any injuries . . . suffered as a result of [federal] agents' violation of" his constitutional rights. *Bivens*, 91 S. Ct. at 2005. However, while *Bivens* expressly validated the

2

conceptual availability of a claim for damages against a federal official in his or her individual capacity, an officer is only responsible for his or her own conduct. *See Ziglar v. Abbasi*, 137 S. Ct. 1843, 1860 (2017). Thus, a plaintiff must "plead that each Government-official defendant, through the official's own official actions, has violated the Constitution." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009). Indeed, "[e]ven a pro se prisoner must link his allegations to material facts . . . and indicate what each defendant did to violate his rights [.]" *Sampson v. Garrett*, 917 F.3d 880, 882 (6th Cir. 2019) (citing *Hill*, 630 F. 3d at 471).

### A.  Fourteenth Amendment Claim

Although Jackson's complaint invokes the Fourteenth Amendment, he does not allege any facts in support of a Fourteenth Amendment claim, nor does he connect Gilley to any specific conduct that allegedly violated the Fourteenth Amendment. While Jackson's complaint alleges that he "was denied [his] appeal process" in relation to his administrative grievance, *see* DE 1 at 5, the "'denial of administrative grievances or the failure to act' by prison officials" does not subject Gilley to liability under *Bivens*. *See Grinter v. Knight,* 532 F.3d 567, 576 (6th Cir. 2008) (quoting *Shehee v. Luttrell,* 199 F.3d 295, 300 (6th Cir.1999)); *see also Nwaebo v. Hawk-Sawyer*, 100 F. App'x 367, 369 (6th Cir. 2004). Nor is Gilley's status as Warden a sufficient basis to pursue a *Bivens* claim against him because *respondeat superior* is not an available theory of liability for *Bivens* actions. *Polk Cnty. v. Dodson*, 102 S. Ct. 445, 453–54 (1981); *see also Iqbal*, 129 S. Ct. at 1949 ("In a § 1983 suit or a *Bivens* action—where masters do not answer for the torts of their servants—the term 'supervisory liability' is a misnomer."). Accordingly, the Court dismisses Jackson's Fourteenth Amendment claim.

B.     **Eighth Amendment Claim**

Jackson's Eighth Amendment claim is based upon his allegations that Gilley did not provide adequate drinking water to inmates at FCI-Manchester or notify the inmate population of unsafe water conditions. However, the *Bivens* remedy is a judicially-created remedy that courts imply only in limited circumstances. *See Ziglar*, 137 S. Ct. at 1854–55. Since *Bivens* was decided in 1971, the Supreme Court has recognized a private right of action for a constitutional violation in only three circumstances: (1) where federal officials searched a private residence without probable cause in violation of the Fourth Amendment, *see Bivens*, 91 S. Ct. 1999 at 2005; (2) where a Congressman terminated an employee on the basis of gender in violation of the Fifth Amendment, *see Davis v. Passman*, 99 S .Ct. 2264, 2279 (1979); and (3) where prison officials displayed deliberate indifference to a prisoner's serious medical needs in violation of the Eighth Amendment, *Carlson v. Green*, 100 S. Ct. 1468, 1474 (1980). *See Ziglar*, 137 S. Ct. at 1854–55.

Since *Carlson* was decided over 40 years ago, the Supreme Court has "consistently rebuffed requests to add to the claims allowed under *Bivens*." *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020); *see also Correctional Services Corp. v. Malesko*, 122 S. Ct. 515, 520 (2001) (noting that "[s]ince *Carlson* we have consistently refused to extend *Bivens* to any new context or new category of defendants.). Thus, "[w]hat started out as a presumption in favor of implied rights of action has become a firm presumption against them." *Callahan v. Federal Bureau of Prisons*, 965 F.3d 520, 523 (6th Cir. 2020) (since *Bivens*, *Davis*, and *Carlson*, "[s]ubsequent developments leave [the plaintiff] with a forbidding hill to climb."). The Supreme Court's directive has been clear that "expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Ziglar*, 137 S. Ct. at 1857; *see also Silva v. United States*, 45 F.4th 1134, 1136 (10th Cir. 2022) ("The Supreme Court's message could not be clearer—lower courts expand *Bivens* claims at their own peril.").

4

Under *Ziglar*, the Court must employ a two-step test to determine if *Bivens* provides a remedy for alleged misconduct by federal officials.

First, a court must decide if the plaintiff's claim presents a "new context" or involves a "new category of defendants" for application of the *Bivens* remedy. *Hernandez*, 140 S. Ct. at 743 (citations omitted). A claim presents a new context "if it is 'different in a meaningful way from previous *Bivens* cases decided by [the Supreme Court.]'" *Id*. (quoting *Ziglar*, 137 S. Ct. at 1859). A difference is "meaningful" when, for example, it involves a different constitutional right, a different category of officers as defendants, a difference in the type of official action, a difference in institutional expertise, or differing risks of judicial intrusion. *See Ziglar*, 137 S. Ct. at 1860.

Second, if the Court finds that a claim arises in a new context, the Court then considers whether there are "special factors counselling hesitation in the absence of affirmative action by Congress." *Ziglar*, 137 S. Ct. at 1857 (quoting *Carlson*, 100 S. Ct. at 1468.). This inquiry "must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id*. at 1857–58. Under this "exacting" two-part test, the answer to the question of whether a court "should engage in the 'disfavored judicial activity' of recognizing a new *Bivens* action . . . will almost always be never." *Elhady v. Unidentified CBP Agents*, 18 F.4th 880, 883 (6th Cir. 2021), *reh'g denied,* No. 20-1339, 2022 WL 326693 (6th Cir. Jan. 25, 2022). "Put another way, the most important question is who should decide whether to provide for a damages remedy, Congress or the courts? If there is a rational reason to think that the answer is Congress—as it will be in most every case—no *Bivens* action may lie." *Egbert v. Boule*, 142 S. Ct. 1793, 1803 (2022) (citation and quotation marks omitted); *see also Ziglar*, 137 S. Ct. at 1857 ("When an issue involves a host of considerations that must be weighed and appraised, it should be committed to those who write

the laws rather than those who interpret them.") (cleaned up). Because "separation of powers should be a guiding light . . . the [Supreme] Court has told us that we must not create a cause of action if there's 'a single sound reason' to leave that choice to Congress." *Elhady*, 18 F.4th at 883 (quoting *Nestlé USA, Inc. v. Doe*, 141 S. Ct. 1931, 1937 (2021)).

Here, Jackson's Eighth Amendment claim is based upon allegations of contaminated drinking water, which presents a context that is entirely new and different from those previously recognized by the Supreme Court as cognizable under *Bivens*. While, like the claim implied in *Carlson*, Jackson's claim sounds in the Eighth Amendment, "[a] claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." *Hernandez*, 140 S. Ct. at 743. Plainly, a prisoner's claim that the Warden failed to provide adequate drinking water and failed to warn inmates that the water was contaminated arises in a different context than the claim in *Carlson* of deliberate indifference to a prisoner's medical needs. *See Greene v. United States*, No. 21-5398, 2022 WL 13638916, at *4 (6th Cir. Sept. 13, 2022) (determining that the plaintiff's Eighth Amendment excessive force claim arose in a new context and was therefore "presumptively non-cognizable"); *Hower v. Damron*, No. 21-5996, 2022 WL 16578864, at *3 (6th Cir. Aug. 31, 2022) (federal prisoner's Eighth Amendment "failure to protect" claim presented a new context from the Eighth Amendment deliberate indifference claim in *Carlson*). Because even a "modest extension" of a prior Supreme Court case constitutes a new context, *Ziglar*, 137 S. Ct. at 1864, the Court finds that the first part of the *Ziglar* test has been met here.

The Court must therefore proceed to the second step of the analysis to determine whether there are any special factors that counsel hesitation before extending the *Bivens* remedy to this new

context. *See Ziglar*, 137 S. Ct. at 1857. Here, there are multiple reasons signaling that a judicially-implied remedy for damages for Jackson's claim is not appropriate.

First, through 42 U.S.C. § 1983, Congress long ago created a statutory cause of action against state actors for violations of constitutional rights. But it has never done so for federal actors. To the contrary, more recently, Congress has taken steps to curtail prisoner litigation, not expand it:

> Some 15 years after *Carlson* was decided, Congress passed the Prison Litigation Reform Act of 1995, which made comprehensive changes to the way prisoner abuse claims must be brought in federal court. So it seems clear that Congress had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs. This Court has said in dicta that the Act's exhaustion provisions would apply to *Bivens* suits. But the Act itself does not provide for a standalone damages remedy against federal jailers. It could be argued that this suggests Congress chose not to extend the *Carlson* damages remedy to cases involving other types of prisoner mistreatment.

*Ziglar*, 137 S. Ct. at 1865 (citations omitted).

Second, there are several alternative means for prisoners to vindicate their constitutional rights. For federal inmates, the BOP's inmate grievance program provides a ready and viable mechanism to challenge staff misconduct. *See Malesko*, 122 S. Ct. at 523 (noting that the BOP's inmate grievance program "provides yet another means through which allegedly unconstitutional actions and policies can be brought to the attention of the BOP and prevented from recurring"). This remedy is not considered less effective merely because it is created by regulation rather than by statute. *See Egbert*, 142 S. Ct. at 1807 ("So long as Congress *or the Executive* has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy.") (emphasis added); *Callahan*, 965 F.3d at 524 ("Alternative processes, for *Bivens* purposes, do not have to be creations of Congress.") (citation omitted). Nor is the grievance program considered a less effective remedy

because it does not provide the deterrence afforded by damages. *See Schweiker v. Chilicky*, 108 S. Ct. 2460, 2467 (1988) ("The absence of statutory relief for a constitutional violation . . . does not by any means necessarily imply that courts should award money damages against the officers responsible for the violation."). Thus, courts have consistently held that the BOP's inmate grievance program provides a viable alternative remedy that counsels against inferring a remedy under *Bivens*. *See Callahan*, 965 F.3d at 524; *Freedland v. Mattingly*, No. 1:20-cv-00081, 2021 WL 1017253, at *8 (M.D. Pa. Mar. 17, 2021) (collecting cases).

In addition, the threat of an investigation through the BOP's Internal Affairs Office or the Department of Justice's Office of the Inspector General may also serve to deter misconduct. *See Hower*, 2022 WL 16578864 at *3. "If there are alternative remedial structures in place, 'that alone,' like any special factor, is reason enough to 'limit the power of the Judiciary to infer a new *Bivens* cause of action.'" *Egbert*, 142 S. Ct. at 1804 (quoting *Ziglar*, 137 S. Ct. at 1858); *see also Malesko*, 122 S. Ct. at 520 ("So long as the plaintiff had an avenue for some redress, bedrock principles of separation of powers foreclosed judicial imposition of a new substantive liability.").

Finally, the context of Jackson's claim is significant, as "[p]rison-based claims also present a risk of interference with prison administration." *Callahan*, 965 F.3d at 524. As the Sixth Circuit recognized in *Callahan*, "'[r]unning a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources,'" all tasks that fall "'peculiarly within the province of the legislative and executive branches.'" *Id*. (quoting *Turner v. Safley*, 107 S. Ct. 2254, 2559 (1987)). Thus, "[g]iven the array of challenges facing prison administration and the complexity of those problems, 'separation of powers concerns . . .' counsel in favor . . . of the judiciary not creating new causes of action in this area." *Id*. (quoting *Turner*, 107 S. Ct. at 2259).

8

The Supreme Court has instructed that "[i]f there is even a single 'reason to pause before applying *Bivens* in a new context,' a court may not recognize a *Bivens* remedy." *Egbert*, 142 S. Ct. at 1803 (quoting *Hernandez*, 140 S. Ct. at 743). Thus, because multiple factors counsel strongly against implying a *Bivens* remedy for Jackson's Eighth Amendment claim based upon allegations of contaminated drinking water, the Court will not do so here. Because *Bivens* does not provide a remedy for Jackson's Eighth Amendment claim against Gilley, this claim must be dismissed. *See Elhady*, 18 F.4th at 884 ("Plaintiffs like Elhady often have no cause of action unless we extend *Bivens*. And if there is no cause of action, courts should stop there.").

For all of these reasons, Jackson's complaint does not allege a viable *Bivens* claim for monetary relief against Gilley. As these are the only claims alleged in Jackson's complaint, his complaint will be dismissed with prejudice.

## IV. Conclusion

Accordingly, the Court hereby **ORDERS** as follows:

1. Plaintiff Charles Jackson's Complaint (DE 1) is **DISMISSED** with prejudice;

2. This matter is **DISMISSED** and **STRICKEN** from the Court's active docket; and

3. The Court will enter a Judgment contemporaneously with this Opinion and Order.

This 26th day of January, 2024.



Signed By:
*Robert E. Wier*  REW
United States District Judge